IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**WANDA ALFORD**                                                                     **PLAINTIFF**

**v.**                                           **CIVIL ACTION NO. 3:18-cv-457-CWR-MTP**

**COMMISSIONER OF SOCIAL SECURITY**                      **DEFENDANT**

## REPORT AND RECOMMENDATION

Plaintiff Wanda Alford brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security Administration denying her claim for supplemental security income. Having reviewed the parties' submissions, the record, and the applicable law, the undersigned recommends that Plaintiff's Motion for Summary Judgment [9] be DENIED, Defendant's Motion to Affirm [15] be GRANTED, and this action be DISMISSED.

## PROCEDURAL HISTORY

On March 17, 2015, Plaintiff applied for supplemental security income and disability insurance benefits. (Administrative Record [8] at 23, 193). Plaintiff alleged that she had been disabled since January 1, 2009, due to anxiety, depression, arthritis, high blood pressure, back problems, and lumbar spinal stenosis. ([8] at 212). After the agency denied Plaintiff's claims, an Administrative Law Judge ("ALJ") held a hearing on April 25, 2017. ([8] at 43-73). During the hearing, Plaintiff amended her alleged disability onset date from January 1, 2009, to January 28, 2013. ([8] at 46). On July 5, 2017, the ALJ issued a decision finding that Plaintiff was not disabled. ([8] at 23-36).

Plaintiff appealed the ALJ's decision, and on June 8, 2018, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the

Commissioner. ([8] at 5-7).  Plaintiff now seeks judicial review in this Court under 42 U.S.C. § 405(g).

## ADMINISTRATIVE LAW JUDGE'S DECISION

In his July 5, 2017, decision, the ALJ applied the five-step sequential analysis set forth in 20 C.F.R. § 404.1520(b)-(f)[1] and determined that Plaintiff was not disabled.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 28, 2013, the amended alleged disability onset date.  At step two, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease of the lumbar and cervical spines, anxiety, and depression."  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. ([6] at 25-27).

The ALJ then examined the record and determined that Plaintiff had the residual functional capacity ("RFC")[2] to "perform light work as defined in 20 CFR 404.1567(b) and

---

[1] This analysis requires the ALJ to make the following determinations:
   (1) whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);
   (2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);
   (3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);
   (4) whether the impairment prevents the claimant from doing past relevant work (if not, a finding of "not disabled" is made);
   (5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).
See 20 C.F.R. §§ 404.1520, 416.92.  The burden of proof rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[2] "Residual Functional Capacity" is defined as the most an individual can still do despite the physical and/or mental limitations that affect what the individual can do in a work setting. 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1).

2

416.967(b)[3] except that she can never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs; occasionally balance, stoop, crouch, crawl, and kneel; can perform only simple, repetitive tasks; can understand, remember, and carry out only simple tasks; and can occasionally interact with the public, co-workers, and supervisors." ([8] at 29). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. ([8] at 34). At step five, however, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform. Accordingly, the ALJ found that Plaintiff was not disabled. ([8] at 34-36).

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to determining whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983). To be substantial, the evidence "must do more than create a suspicion of the existence of the fact to be established." *Id*. (citations omitted).

However, "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b); 416.967(b).

(5th Cir. 2001) (internal citations and quotations omitted). Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). A court may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, "even if the evidence preponderates against" the Commissioner's decision. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). If the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders,* 914 F.2d at 617. Moreover, "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).

## ANALYSIS

In this action, Plaintiff asserts the following grounds for relief:

1. The ALJ's conclusions as to Plaintiff's RFC are not supported by substantial evidence resulting in a defective hypothetical posed to the Vocational Expert and conclusions at Step 5 unsupported by substantial evidence. Specifically, the ALJ failed to incorporate limitation to work-task pace recognized elsewhere by the ALJ.

2. The ALJ fails to properly take into account the inability to afford treatment in the evaluation of the opinions of Dr. Lott, Dr. Cook, and Dr. Dunn, as recognized by SSR 82-59 and *Lovelace v. Bowen*.

3. Evidence of record demonstrates Plaintiff's inability to perform the basic mental demands of unskilled work as described in SSR 85-15, specifically with respect to Plaintiff's concentration and memory as reflected by objective testing by Dr. Cook, agency psychiatrist.

**Ground 1:** **The ALJ's conclusions as to Plaintiff's RFC are not supported by substantial evidence resulting in a defective hypothetical posed to the Vocational Expert and conclusions at Step 5 unsupported by substantial evidence. Specifically, the ALJ failed to incorporate limitation to work-task pace recognized elsewhere by the ALJ.**

At step five of the sequential analysis, the ALJ considered whether jobs existed in significant numbers in the national economy that Plaintiff could perform. The ALJ enlisted the

4

assistance of a vocational expert ("VE") to make this determination. In order to determine the extent to which Plaintiff's limitations eroded the occupational base, the ALJ asked the VE whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and RFC. ([8] at 35; 64-65). The VE testified that such an individual would be able to perform jobs such as garment sorter, silver wrapper, and marking clerk. ([8] at 35; 64-65).

According to Plaintiff, the ALJ found that Plaintiff had limitations concerning pace, but he failed to incorporate such limitations into Plaintiff's RFC or explicitly include the limitations in his hypothetical question to the ALJ. Plaintiff argues that because the ALJ's hypothetical question to the VE did not incorporate any limitation as to pace, the VE's testimony is rendered unreliable.

An ALJ is not allowed to rely on a VE's responsive opinions where the ALJ poses an incomplete hypothetical to the VE. *See Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980). "Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question), a determination of non-disability based on such a defective question cannot stand." *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

In determining Plaintiff's RFC, the ALJ considered opinion evidence, subjective complaints, medical records, and activities of daily living. Plaintiff points out that as part of his analysis the ALJ stated as follows:

> Furthermore, the claimant appears to retain the physical capacity to engage in a number of activities at home. The claimant and her mother both noted that the claimant can cook meals, although she cannot stand for the whole process; can engage in household repairs, laundry, and chores, although she must sometimes reduce her pace and take breaks; can go outside when she feels like it; and can shop for food and necessities multiple times per week, although again, she requires breaks (3E at 3-4; 4E at 3-4).

([8] at 31).

The ALJ found that "[o]verall, the claimant's ability to live on her own for years, to accomplish tasks with some limitations on her pace and standing, and her previously-reported physical capacities lead the undersigned to find that the above residual functional capacity assessment is sufficient to account for the claimant's physical difficulties." ([8] at 31). Plaintiff also points out that, in the ALJ's step-three analysis, he determined that Plaintiff had moderate limitations with regard to concentration, persistence, or pace. ([8] at 28).

Considering this and other information, the ALJ concluded that Plaintiff had the RFC to perform light work "except that she can never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs; occasionally balance, stoop, crouch, crawl, and kneel; can perform only simple, repetitive tasks; can understand, remember, and carry out only simple tasks; and can occasionally interact with the public, co-workers, and supervisors." ([8] at 29). Then, at step five, the ALJ asked the VE to consider an individual with Plaintiff's RFC. ([8] at 35).

Plaintiff argues that this question failed to incorporate all her disabilities because limitations concerning pace were not explicitly mentioned nor were they incorporated into Plaintiff's RFC. Courts, however, have found that hypothetical questions similar to the one posed by the ALJ reasonably incorporate limitations as to concentration, persistence, and pace. *See Bordelon v. Astrue*, 281 Fed. App'x 418, 422-23 (5th Cir. 2008) (holding that a hypothetical question to a VE was proper because "restriction to rare public interaction, low stress, and

6

simple, one-to-two step instructions reflect that the ALJ reasonably incorporated [plaintiff's] moderate concentration, persistence, and pace limitations"); *Smith v. Colvin*, 2014 WL 1407437, at *4 (N.D. Tex. Mar. 24, 2014) (holding that an ALJ had incorporated claimant's moderate difficulties in concentration, persistence, and pace by limiting him to jobs that are "simple" and "unskilled" and finding "moderate limitations in his ability to interact appropriately with the public, coworkers, and supervisors and his ability to respond appropriately to normal work situations and changes in a routine work setting").

Here, the ALJ included similar limitations in the Plaintiff's RFC that likewise and necessarily incorporated Plaintiff's difficulties as to concentration, persistence, and pace. Specifically, the ALJ found that Plaintiff "can perform only simple, repetitive tasks; can understand, remember, and carry out only simple tasks; and can occasionally interact with the public, co-workers, and supervisors." ([8] at 29). Because the ALJ reasonably incorporated Plaintiff's specific functional limitations in the hypothetical question to the VE and because Plaintiff and her counsel were afforded an opportunity to correct perceived deficiencies in the ALJ's hypothetical question,[4] the hypothetical question was sufficient to support the ALJ's findings as to available work.

**Ground 2:** **The ALJ fails to properly take into account the inability to afford treatment in the evaluation of the opinions of Dr. Lott, Dr. Cook, and Dr. Dunn, as recognized by SSR 82-59 and *Lovelace v. Bowen*.**

Plaintiff argues that the ALJ erred in his analysis of the consultative examiners' opinions by considering the Plaintiff's lack of mental health treatment without accounting for Plaintiff's alleged inability to afford treatment. A claimant's failure to seek or comply with medical treatment is relevant to evaluate her alleged symptoms. "A medical condition that can

---

[4] Plaintiff's counsel examined the VE during the hearing before the ALJ. ([8] at 66-72).

7

reasonably be remedied either by surgery, treatment, or medication is not disabling." *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987). An ALJ, however, is required to review the possible reasons a claimant may not seek or comply with medical treatment. The inability to afford treatment may justify a failure to follow prescribed treatment. SSR 82-59. "If . . . the claimant cannot afford the prescribed treatment or medicine, and can find no way to obtain it, 'the condition that is disabling in fact continues to be disabling in law.'" *Lovelace*, 813 F.2d at 59 (quoting *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986)).

On three separate occasions, Disability Determination Services referred Plaintiff to mental health professionals for comprehensive mental status examinations. On January 28, 2013, Dr. Criss Lott examined Plaintiff. ([8] at 313-17). Dr. Lott diagnosed Plaintiff with recurrent major depressive disorder that was moderate to severe. ([8] at 316). According to Dr. Lott, Plaintiff was not capable of performing routine, repetitive activities or capable of interacting in a competitive work environment. Dr. Lott stated that Plaintiff's prognosis was "guarded without more appropriate mental health care." ([8] at 316). Dr. Lott noted that Plaintiff had not previously received treatment from a mental health professional. ([8] at 314). Plaintiff told Dr. Lott that she had attempted to obtain counseling, but could not afford it because she did not have insurance. ([8] at 316). Dr. Lott encouraged Plaintiff to seek more intensive care, including inpatient treatment. ([8] at 316).

On July 31, 2014, Dr. William Cook examined Plaintiff. ([8] at 424-27). According to Dr. Cook, Plaintiff appeared to suffer from a personality disorder and mood disorder. ([8] at 426). Dr. Cook found that Plaintiff's ability to perform routine, repetitive work-related tasks seemed doubtful. ([8] at 426). Dr. Cook, however, also found that Plaintiff may have been "malingering." ([8] at 426). Dr. Cook noted that Plaintiff seemed to be a poor source of

information and "did not appear to put forth her best effort in answering mental status examination questions." ([8] at 424, 426). Like Dr. Lott, Dr. Cook noted that Plaintiff had not been under the care of mental health professionals. ([8] at 424, 426). Dr. Cook stated that Plaintiff might benefit from treatment at a mental health center. ([8] at 426).

On July 8, 2015, Dr. Joseph Dunn examined Plaintiff. ([8] at 506-08). Dr. Dunn's impression was that Plaintiff had "an unspecified depressive disorder with anxious distress and some features of major depressive disorder." ([8] at 508). Dr. Dunn found that Plaintiff would have difficulty interacting effectively with others, maintaining work-related responsibilities, and dealing with work-related stress. ([8] at 508). Dr. Dunn noted that Plaintiff had not received mental health treatment. ([8] at 506). He found that Plaintiff was in need of outpatient mental health treatment and that she "could benefit from mental health counseling if motivated." ([8] at 508).

The ALJ considered the consultative examiners' opinions, noting their findings that Plaintiff would likely have difficulties completing complex tasks, interacting with others, and dealing with workplace stress. ([8] at 32). The ALJ, however, also noted that Plaintiff appeared not to put forth her full effort during one of the examinations. ([8] at 32). Additionally, the ALJ noted the general lack of treatment sought for Plaintiff's mental symptoms and limitations. ([8] at 32).

The ALJ stated as follows:

> Although she has received medication for mental health, such as venlafaxine, trazodone, and amitriptyline, from her primary care physicians, the claimant testifies that she has not sought additional psychiatric services or mental health treatment such as therapy or specialist attention (10F; 11F). In each consultative mental examination report, the examiner specifically notes that the claimant was either encouraged to seek additional treatment or likely to see a benefit in her symptoms from additional or alternative treatment (1F at 4; 6F at 3; 9F at 3). The undersigned finds it relevant that all three mental health specialists who examined

9

> the claimant indicated that the claimant could benefit from mental health counseling or alternative treatment, and finds that this likely shows that the claimant's symptoms and limitations could be somewhat improved with additional treatment or help from a specialist.

([8] at 32). The ALJ afforded the consultative examiners' opinions "less than great weight" because the examiners believed Plaintiff's "symptoms and limitations at examination were more severe than they would otherwise be if additional or alternative treatment were sought." ([8] at 33).

Plaintiff points out that she told Dr. Lott about her inability to afford counseling and argues that the ALJ erred by failing to consider her justifiable reason for not seeking treatment. "The requirement that the ALJ consider a claimant's inability to pay for medical treatment does not apply, however, unless the claimant has "shown that [she] did not have access to free or low cost medical services." *Klaus v. Colvin*, 2016 WL 4573878, at *15 (N.D. Tex. Aug. 4, 2016). Plaintiff was required to explore "all possible resources," such as clinics, charitable agencies, and public assistance programs. SSR 82-59. Plaintiff points to her statement to Dr. Lott that she attempted to obtain counseling and her statement at the hearing that she had not been able to obtain treatment. ([8] at 62-63, 316). Plaintiff, however, has failed to demonstrate that she explored "all possible resources" and does not point to any documentation of her contacts with mental health care resources. SSR 82-59 ("Contacts with such resources and the claimant's financial circumstances must be documented").[5]

Without evidence of Plaintiff's efforts to obtain treatment, "the ALJ's purported failure to comply with SSR 82-59 is no reason to remand Plaintiff's request for benefits." *Rouner v.*

---

[5] The undersigned notes that Plaintiff sought and obtained medical treatment in the past. As the ALJ pointed out, Plaintiff even received medication for mental health, such as venlafaxine, trazodone, and amitriptyline, from her primary care physicians. ([8] at 32).

*Colvin*, 2015 WL 1289794, at *15 (S.D. Tex. Mar. 20, 2015), *see also Chavira v. Astrue*, 2012 WL 948743, at *24-25 (S.D. Tex. Feb. 29, 2012). The ALJ's treatment of the consultative examiners' opinions does not require reversal of the Commissioner's decision or remand of this action.

**Ground 3:   Evidence of record demonstrates Plaintiff's inability to perform the basic mental demands of unskilled work as described in SSR 85-15, specifically with respect to Plaintiff's concentration and memory as reflected by objective testing by Dr. Cook, agency psychiatrist.**

Plaintiff argues that based on the evidence of record, she should be found to be disabled due to her severe limitations in memory and concentration. Plaintiff points to SSR 96-8p, which provides: "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." Plaintiff argues that the findings of one of her consultative examiners, Dr. William Cook, demonstrate that her memory and concentration were impaired.

In his July 31, 2014, examination, Dr. Cook noted that Plaintiff's recall of remote events was poor and that her recall of recent events was poor "as evidenced by her inability to recall one out of three objects in five minutes." ([8] at 425). However, Plaintiff's immediate recall was good "as evidenced by her ability to recall four out of five digits forward and five out of five digits backwards." ([8] at 425). Dr. Cook also noted that Plaintiff's concentration was poor. ([8] at 425).

Plaintiff points to the VE's testimony that an individual capable of completing tasks at a rate of only one out of three due to limitations with memory would not be able to perform the

11

jobs identified by the VE. ([8] at 66).  Plaintiff argues that Dr. Cook's findings coupled with the VE's testimony demonstrate that she is disabled.

The ALJ considered Dr. Cook's findings and other evidence and determined that Plaintiff had moderate limitations in understanding, remembering, or applying information. ([8] at 27-28). The ALJ noted that specific testing tended to show that Plaintiff had some minor memory deficits and some limitations on her ability to recall and apply information. ([8] at 28).  Thus, the ALJ "limited the complexity of tasks that the claimant could be assigned in the workplace and her interaction with others." ([8] at 32).  According to the ALJ, "[t]he complexity of work limitations should account for the claimant's memory deficits observed during some testing as well as for her reported difficulties paying attention and staying focused for periods of time." ([8] at 32).

The ALJ's determination is supported by substantial evidence.  Although Dr. Cook accepted the results of his examination, stating that "the results of this examination are believed to be valid," he noted that Plaintiff seemed "to be a poor source of information." ([8] at 424). Dr. Cook also found that Plaintiff may have been "malingering" and "did not appear to put forth her best effort in answering mental status examination questions." ([8] at 424, 426).

Additionally, the ALJ noted that Plaintiff's treatment notes consistently reported that she had no symptoms of memory loss and that her recent and remote memory were intact. ([8] at 27).[6]  Another one of Plaintiff's consultative examiners, Dr. Criss Lott, also found that Plaintiff's memory was intact.  Dr. Lott stated as follows:

---

[6] Treatment notes observing that Plaintiff's had no symptoms of memory loss and that her recent and remote memory were intact are found throughout the Administrative Record [8], including at pages 479, 487, 518, 521, 525, 528, 531, 534, 538, 541, 544, 547, 551, 556, 562, 565.

> The claimant's recent, remote, and immediate memory appeared intact as she had not difficulty recalling childhood information and current personal information. She repeated four of five objects immediately, and four of five after a several minutes' delay. Attention/concentration also appeared intact, as she had no difficulty performing simple calculations or spelling the word world in reverse. She repeated four digits forward and three in reverse.

([8] at 315).

Although certain portions of the medical records provide support for Plaintiff's assertions, other portions of the records serve as credible and substantial evidence supporting the ALJ's determination. This Court does not resolve conflicts in the evidence; that is left to the discretion of the Commissioner, and Plaintiff has failed to show that no credible evidence supports the ALJ's decision. *Selders*, 914 F.2d at 617; *Boyd*, 239 F.3d at 704.

## CONCLUSIONS AND RECOMMENDATIONS

Based on the foregoing, the undersigned finds that the Commissioner's decision is supported by substantial evidence and that no reversible error of law was committed by the ALJ. Accordingly, the undersigned recommends that Plaintiff's Motion for Summary Judgment [9] be DENIED, Defendant's Motion to Affirm be GRANTED, the Commissioner's final decision be AFFIRMED, and that this action be DISMISSED.

## NOTICE OF RIGHT TO OBJECT

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party,

except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

    This 16th day of July, 2019.

s/ Michael T. Parker  
United States Magistrate Judge
